UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| TOMMY CORCORAN, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 3:16CV641-PPS-MGG |
| NANCY BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

# OPINION AND ORDER

Tommy Corcoran appeals the Social Security Administration's decision to deny his application for Social Security disability benefits. An administrative law judge found that Corcoran was not disabled within the meaning of the Social Security Act. Corcoran raises only one challenge to the ALJ's decision – that in her opinion, the ALJ did not cite to Corcoran's testimony at the hearing. However, I conclude that the ALJ's decision was supported by substantial evidence. I will, therefore, affirm the decision of the ALJ.

**Background**

At the time of the hearing, Tommy Corcoran was 50 years old. He testified that he was married and had one minor child, a daughter who was 17. [A.R. 40.] Corcoran

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as defendant in this suit.

1

possessed a valid driver's license and was able to drive. [*Id.*] He completed two years of college, earning an Associate's degree in Science, Aviation Maintenance. [*Id.*] He has an "A&P" (Airframe and Powerplant) license through Vincennes University. *[Id. at 40-41.]* With respect to his work history dating back to 1999, Corcoran testified that he worked for Bilby Trucking, driving a dump truck. [*Id.* at 42.] Next he worked for Keebler, where he drove a semi-truck on local routes in Indianapolis and surrounding cities. [*Id.* at 42-43.] When Keebler was acquired by Kellogg, Corcoran continued to work as a semi-truck driver, doing substantially the same work. [*Id.* at 43.] Corcoran left Kellogg in 2011, when it closed, and he has not worked since. [*Id.*]

Corcoran reported that it is mainly his hands that keep him from working. [*Id.*] He testified that he has been in pain management for many years. The last time he engaged in pain management was in 2012, when he was diagnosed with carpal tunnel. [*Id.* at 43-44.] He described his symptoms as numbness, tingling, and pain in both hands. He underwent surgery on both of his hands, but he reported that it helped "[v]ery little" and that he still has the same problems. [*Id.* at 44.] He continued to experience numbness and tingling, and he stated that his hands swell up if he uses them too much. He also stated that his hands become numb when driving. [*Id.*] He rated his pain without medication as a five or six out of ten, and with medication, a two or three out of ten. [*Id.* at 46-47.]

In addition to pain in his hands caused by carpal tunnel syndrome, Corcoran also

testified that his lower back and low blood sugars also interfered with his ability to work. [*Id.* at 44.] He reported that he was a diabetic, and despite having an insulin pump, he was still having problems with his blood sugar. [*Id.* at 44-45.]

Corcoran further described pain and stiffness in his both his lower and mid-back. [*Id.* at 47, 58.] He rated his pain as a seven to eight out of ten without medication, and a five to six with it. [*Id.* at 47.] Corcoran was referred by a surgeon to follow up with a neurologist, but at the time of the hearing, he had not yet found or made an appointment because his knee had been "locked up," which delayed him. [*Id.* at 49.] In addition to back pain, Corcoran testified that he has neck pain and nerve spasms on the sides of his shoulders. [*Id.* at 52.]

With respect to daily activities, Corcoran reported that he could take his dog for a short walk around the yard, but that was all he could handle. [*Id.* at 50.] He testified that he could lift 20 pounds, and he could reach up into the cupboard and take down a plate or cup, but he could hardly get dressed. [*Id.* at 50-51.] He is able to help bring groceries into the house, but he does not do any laundry or cleaning. [*Id.* at 53.] He rides a tractor on his property to mow the lawn in increments of about 20 minutes at a time, but this can hurt his back. [*Id.* at 53-54.] In his spare time, he works on motorcycles in his garage. [*Id.* at 55.]

The ALJ engaged in the five-step sequential evaluation process for determining whether Corcoran was disabled. At Steps One and Two, the ALJ found that Corcoran

3

met the insured status requirements and that he had not engaged in substantial gainful activity since December 1, 2012, the alleged onset date. [*Id.* at 20.] At Step Three, the ALJ found that Corcoran had two severe impairments: diabetes and degenerative disc disease of the cervical spine. [*Id.*] The ALJ also evaluated whether Corcoran's carpal tunnel syndrome and mental difficulties constituted severe impairments. She found that Corcoran's carpal tunnel does not constitute a severe impairment because his symptoms had been alleviated with treatment. [*Id.* at 21.] With respect to his mental difficulties, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders. Based on this analysis, she found that his mental difficulties were nonsevere. [*Id.* at 22.] At Step Four, the ALJ found that Corcoran's impairments were not listed impairments. [*Id.* at 23.]

At Step Five, the ALJ found that Corcoran has the residual functional capacity to perform a range of light work as defined in the regulations. [*Id.* at 24.] In making this determination, the ALJ stated that she considered all of the alleged symptoms. [*Id.*] She expressly noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [*Id.*]

In particular, the ALJ found that there were inconsistencies in regards to Corcoran's allegations of severe symptoms and the record as a whole. Corcoran reported significant problems with routine tasks, but other evidence contradicted this.

First, in October 2012, Corcoran reported that he had been helping his son refurbish a vehicle. Second, as of February 2013, Corcoran was still concerned with obtaining his commercial drivers' license, indicating that he was still looking for work. Third, in August 2013, during a physical therapy appointment for his wrist, he indicated that he only had "some[what] difficulty" with dressing, bathing, feeding, and other fine motor skills. Later, in October 2013, after his second carpal tunnel surgery, Corcoran reported that he was using his hand for most of his work activity. In December 2013, he stated that he was vigorously using both hands. The ALJ found it notable that his hands were completely stained with grease and dirt. [*Id.* at 27.]

The ALJ also considered his medications. She found that Corcoran was less than compliant in his treatment recommendations, and she noted that he was discharged from his pain management clinic due to abnormal pill count and a positive urine drug screen. She reasoned that his noncompliance with treatment recommendations suggested that his symptoms were not as severe as alleged. [*Id.* at 28.]

With respect to Corcoran's pain treatment, the ALJ observed that he had undergone surgery on both his hands and his cervical spine. Corcoran admitted that the bilateral carpal tunnel releases were effective. And with regard to his cervical fusion, although he continued to complain of some pain, the imaging and clinical signs suggested that the surgery was successful. Overall, based on a totality of the evidence, the ALJ found that the treatment was effective in alleviating the worst of his symptoms.

5

[*Id.*]

In assessing Corcoran's alleged limitations, the ALJ noted that he complained of significant limitations, but the record failed to support this. First, even though he had trouble controlling his blood sugar levels, he never developed complications from diabetes, including retaining normal vision and never experiencing neuropathy in his extremities. Second, with respect to his neck pain, although the record confirmed this ongoing pain, he ultimately underwent a fusion surgery. His medical records after the surgery showed that he was neurologically intact. During routine doctor appointments, Corcoran reported greater functional abilities and indicated that his treatment was mostly effective in alleviating his symptoms. [*Id.*]

Because the ALJ found that Corcoran retained residual functional capacity, she concluded that he was not disabled and denied his application for benefits. Corcoran sought review from the Appeals Council, which denied his request.

## Discussion

Corcoran makes one argument, which he believes calls for a remand. I will consider his argument, but in doing so I must keep in mind that review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then I must affirm the decision. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a substantial evidence determination, I must review the record as a whole, but I cannot re-weigh the evidence or substitute my judgment for that of the ALJ. *Id*.

Corcoran's one issue with the ALJ's opinion is that she only twice cited his testimony from the hearing. He claims that failing to consider Corcoran's testimony means that the ALJ did not base her decision on substantial evidence because she ignored Corcoran's own testimony, which constituted substantial contrary evidence. This argument essentially challenges the ALJ's credibility determination.

The ALJ's credibility determinations are entitled to deference because the ALJ is "in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). I will reverse an ALJ's credibility finding *only* if the claimant can show that it was "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). "Patently wrong," in this context, means that the decision lacks any explanation or support. *Murphy*, 759 F.3d at 816.

In this case, the ALJ adequately explained why she discredited some of Corcoran's allegations, and her explanation was not unreasonable. The ALJ identified several inconsistencies between Corcoran's testimony and application and the medical evidence in the record. In arguing that the ALJ erred, Corcoran cites to particular portions of his testimony, which he said support finding that Corcoran is disabled.

7

Broadly speaking, Corcoran challenges the ALJ's failure to take into account his testimony regarding Corcoran's ability to comprehend and learn, pain in his hands caused by carpal tunnel syndrome, lower back and shoulder pain and spasms, diabetes and low blood sugar, and inability to walk for long distances and difficulty in bending over.

But after reviewing the ALJ's decision, it strikes me that, even if the ALJ did not specifically refer to Corcoran's testimony, she carefully considered all of these allegations as to his impairments and their frequency, intensity, and duration. Indeed, she expressly recognized each and every one of the impairments that Corcoran referenced in his testimony at the hearing, including his mental difficulties, carpal tunnel syndrome, back pain, diabetes, and limitations in his daily activities.

She then weighed the credibility of those allegations as made by Corcoran against the objective medical evidence. As noted above, the ALJ found that, despite Corcoran's allegations of significant problems with routine tasks, other evidence contradicted this. The ALJ pointed to Corcoran's vigorous use of both hands, his looking for work as a commercial driver as late as February 2013, and his statement during physical therapy that he had only "some[what] difficulty" with dressing, bathing, feeding, and other fine motor skills. [A.R. at 27.] The ALJ also noted that Corcoran had been noncompliant with his medication and treatment, which undercut his allegations as to the severity of his symptoms. [*Id.* at 28.] In addition, the ALJ

8

considered the objective medical records concerning Corcoran's carpal tunnel syndrome and degenerative disc disease of his cervical spine. She observed that the imaging and clinical signs had suggested the cervical spine fusion was successful, and Corcoran himself had admitted that the carpal tunnel syndrome surgery was effective. [*Id.*] With respect to his diabetes, the ALJ looked to the objective medical evidence and noted that Corcoran, despite having trouble controlling his blood sugar, had never had any complications from the disease. [*Id.*] Finally, with regards to his neck pain, the ALJ considered that, after his surgery, Corcoran's medical records showed he was neurologically intact, and Corcoran had indicated that his treatment was mostly effective in alleviating his symptoms. [*Id.*]

"Although a claimant can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Although Corcoran recites excerpts from his testimony in the argument section of his brief, he fails to identify even one piece of evidence from that testimony that undermines the ALJ's decision – let alone an alleged impairment that the ALJ did not fully consider.

On the contrary, Corcoran doesn't really even argue that the ALJ's credibility determination was patently wrong. Instead, he says that "it is impossible to know if the ALJ actually considered [his] testimony as it is never truly discussed in the decision."

[DE 18 at 10.] This argument is without merit. There is no requirement that the ALJ cite to witness testimony in making her assessment. An ALJ need not provide a written evaluation of each piece of evidence or testimony. *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985). Moreover, while it's true that the ALJ only twice explicitly referred to Corcoran's testimony at the hearing, it's obvious to me that, throughout her decision, the ALJ was in fact considering his testimony, as she referenced and carefully analyzed the same impairments and symptoms that Corcoran offered at his testimony.

In sum, a claimant must do more than point to a different conclusion that the ALJ may have reached to show that the credibility determination is patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). The ALJ reached her determination after weighing the complete record, and I cannot reweigh the evidence anew and impose my own judgment above that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008). In this case, I cannot say that the ALJ's credibility determination was patently wrong.

## Conclusion

For all of the above reasons, the final decision of the Commissioner of Social Security denying plaintiff Tommy Corcoran's application for disability insurance benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: March 19, 2018.

   s/   Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**